**Cathy Ann GLATER, Plaintiff, Appellant,**

v.

**ELI LILLY & CO., Defendant, Appellee.**

No. 82–1864.

United States Court of Appeals, First Circuit.

Argued April 4, 1983.

Decided July 27, 1983.

---

Stanley M. Brown, Manchester, N.H., with whom Brown & Nixon Professional Association, Manchester, N.H., Thomas R. Watson, and Tybursky & Watson, Portsmouth, N.H., were on brief, for plaintiff-appellant.

Don M. Kennedy, Boston, Mass., with whom Marshall Simonds, P.C., Frank Dennis Saylor, IV, Goodwin, Procter & Hoar, Boston, Mass., John A. Graf, Richard S. Snierson, and McLane, Graf, Raulerson & Middleton, P.A., Manchester, N.H., were on brief, for defendant-appellee.

Before CAMPBELL, Chief Judge, COFFIN and BOWNES, Circuit Judges.

BOWNES, Circuit Judge.

Plaintiff-appellant Cathy Glater brought this diversity action in the District Court for the District of New Hampshire against Eli Lilly & Co. (Lilly) to recover monetary damages for injuries allegedly caused by her exposure *in utero* to diethylstilbestrol (DES) manufactured and distributed by Lilly. By its order dated October 13, 1982, the district court granted Lilly's motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. This appeal followed.

### I. *Facts and Proceedings Below*

The issues in this case stem from the question of whether or not Glater, who had lived in New Hampshire for a period of years beginning in 1975, was a resident and citizen of that state when this action commenced. She filed her complaint with the district court in January 1981. In this complaint she alleged, *inter alia,* that she was a resident of Hooksett, New Hampshire, and that Lilly was a foreign corporation doing business in the state. Lilly answered that it lacked knowledge or information sufficient to form a belief as to Glater's residence, but admitted to doing business in New Hampshire. At her deposition on March 5, 1981, Glater testified that she lived in Hooksett and commuted from there to her job in Burlington, Massachusetts.

More than thirteen months after Glater filed her complaint Lilly, in the course of discovery, received information indicating that Glater actually resided in Lynn, Massachusetts. Further discovery revealed that she had leased an apartment in Lynn beginning in August 1980, five months before filing her complaint in this action. Around this same time Glater, who had been working for the Allstate Insurance Company in Bedford, New Hampshire, transferred to an Allstate office in Burlington, Massachusetts. She maintains that she continued to be a domiciliary and citizen of New Hampshire even after her move to Massachusetts in August 1980. From September to November 1980 she apparently spent several nights a week at a friend's apartment in Hooksett and from that time through April 1981 she spent several weekends a month there in an effort to maintain her status as a New Hampshire domiciliary. She also points to other factors, such as her driver's license, auto registration and insurance, and

her income tax returns to support her claim of continued New Hampshire citizenship after August 1980 and throughout the course of this litigation.

On June 11, 1982, after taking additional depositions to substantiate Glater's Massachusetts connections, Lilly moved under Federal Rule of Civil Procedure 15(a) for leave to amend its answer to include the defenses of lack of jurisdiction over the person and improper venue and moved to dismiss under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3). It denied both that Glater was a New Hampshire resident and that its business activities in New Hampshire were sufficient to confer jurisdiction in this case.

In its order from which Glater now appeals the district court granted Lilly's motion to dismiss for lack of personal jurisdiction and, because it found this issue dispositive, did not reach the question of venue. Glater had objected to the motion to amend on the ground that it was too late at that time to raise these defenses. The district court found, however, that the original pleadings were sufficient, without amendment, to raise the jurisdictional issue because Lilly's answer that it lacked knowledge or information sufficient to form a belief as to Glater's residence constituted a denial of her averment that she resided in New Hampshire.

In its analysis of the jurisdictional question the court noted that the New Hampshire long-arm statute extends jurisdiction over foreign corporations to the constitutional limit. Relying heavily on our opinion in *Keeton v. Hustler Magazine, Inc.,* 682 F.2d 33 (1st Cir.1982), *cert. granted,* —— U.S. ——, 103 S.Ct. 813, 74 L.Ed.2d 1012 (1983), the court concluded that the focal point of the question was New Hampshire's interest in the suit and, more specifically, in protecting the plaintiff. There was no evidence that the injury had arisen in New Hampshire; the evidence indicated that Glater's mother lived in Massachusetts while Glater was *in utero,* that Glater was born in Massachusetts, had been treated there for the cancer allegedly caused by

DES, and had lived there until she moved to New Hampshire in 1975. The court weighed Lilly's contacts with New Hampshire, the cause of action's connection with those contacts, and the forum's interest in protecting a person who had been a citizen of the state but had moved to Massachusetts before filing the action and concluded that it lacked jurisdiction.

## II. *Availability of the Personal Jurisdiction Defense*

On appeal Glater argues that Lilly's answer that it lacked information sufficient to form a belief as to Glater's residence was not sufficient to raise the defense of lack of personal jurisdiction, that at best this answer only raised a factual question about the plaintiff's residency. She also argues that under the Federal Rules Lilly had waived its right to raise this defense by not including it in the original answer and that the rules prohibit amending the answer to raise it.

It is settled law that a defendant's good faith answer that it lacks knowledge or information sufficient to form a belief as to the truth of an averment constitutes a denial. *E.g.,* Fed.R.Civ.P. 8(b); 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1262 (1969). And with respect to a question such as the existence of diversity jurisdiction it seems reasonable that a defendant's answer that it lacks knowledge on which to form a belief as to plaintiff's residence is sufficient to raise the issue. *See Barthel v. Stamm,* 145 F.2d 487, 489 (5th Cir.1944). *But see LaSalle Co. v. Kane,* 8 F.R.D. 625, 626 (E.D.N.Y.1949) (Defendant's answer with respect to plaintiff's status as a Delaware corporation, standing alone, was not sufficient to raise the issue of jurisdiction. This conclusion, however, might have stemmed from the notion that corporate status was a matter of public record accessible to defendant.).

With respect to the question of personal jurisdiction, however, there is some appeal in Glater's argument that a response of lack of knowledge to form a belief as to *plaintiff's* residence does not raise the issue of

jurisdiction over the *defendant.*[1] This argument is bolstered by the fact that Lilly's subsequent statements made to support its motion for leave to amend its answer clearly showed that it had no intention of raising the jurisdictional issue in its original answer. *Cf. Alger v. Hayes,* 452 F.2d 841, 843–44 (8th Cir.1972) (looking to subsequent proceedings to clarify defendant's intent behind ambiguous answer that the court "lacks jurisdiction"). The technical point of whether or not Lilly's original answer raised the defense of lack of jurisdiction is relatively immaterial, however, because we find that the rules do not prohibit Lilly from amending its answer.

Glater cites Federal Rules 12 and 15 to support her argument that Lilly waived the defense of lack of personal jurisdiction by omitting it from its original answer. Indeed, these rules do provide a strict waiver rule with respect to this defense. Rule 12(h)(1) states:

> A defense of lack of jurisdiction over the person, improper venue, insufficiency of process, or insufficiency of service of process is waived (A) if omitted from a motion in the circumstances described in subdivision (g), or (B) if it is neither made by motion under this rule nor included in a responsive pleading or an amendment thereof permitted by Rule 15(a) to be made as a matter of course.

Fed.R.Civ.P. 12(h)(1). It is clear under this rule that defendants wishing to raise any of these four defenses must do so in their first defensive move, be it a Rule 12 motion or a responsive pleading. *See, e.g., Myers v. American Dental Association,* 695 F.2d 716, 720–21 (3d Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 2453, 77 L.Ed.2d 1333 (1983); *Rauch v. Day & Night Manufacturing Corp.,* 576 F.2d 697, 701 (6th Cir.1978); *Pila v. G.R. Leasing and Rental Corp.,* 551 F.2d 941, 942–43 (1st Cir.1977); *Bethlehem Steel Corp. v. Devers,* 389 F.2d 44, 46 (4th Cir.1968). If they fail to do so, the only manner in which to salvage the defense is

by an amendment made as a matter of course. Such an amendment was not available to Lilly here because the requisite time period set forth in Rule 15(a) had expired. Although Rule 15(a) also provides for amendments to pleadings by leave of the court and states that "leave will be freely given when justice requires," it follows from the language of Rule 12(h)(1) that this amendment procedure is not available to raise the personal jurisdiction defense. Fed.R.Civ.P. 12(h)(1); *Konigsberg v. Shute,* 435 F.2d 551, 552 (3rd Cir.1970) (per curiam). *See generally* C. Wright & A. Miller, *Federal Practice and Procedure* § 1391, at 855 (1969).

■ A close reading of Rule 12, however, does reveal an exception to this strict waiver rule that is applicable here. Rule 12(g) operates in conjunction with Rule 12(h) to require that all defenses permitted to be raised by motion must be included in the same motion. This requirement, however, extends only to defenses "then available." Fed.R.Civ.P. 12(g). This language of Rule 12(g) logically also applies to Rule 12(h) with the result that under that subsection defendants do not waive the defense of personal jurisdiction if it was not available at the time they made their first defensive move. *See* Fed.R.Civ.P. 12(h) advisory committee notes (1966 Amendment) (stating that the waiver provisions reinforce the Rule 12(g) policy forbidding successive motions by imposing waiver as to those specified defenses the defense "then has" but omits from its motion). In the case before us the defense was not originally available to Lilly because Glater's complaint did not put it on notice that her New Hampshire domicile was at least questionable. It could not waive a defense involving facts of which it was not, and could not have been, expected to have been, aware. *See* C. Wright & A. Miller, *supra,* § 1391, at 853–54 ("Rule 12(h) does not provide for waiver if the omitted defense was unavailable

---

1. Of course, this argument loses some merit to the extent that one views the residency of a plaintiff as playing a vital role in the analysis of personal jurisdiction. The Supreme Court may

clarify this when it reviews *Keeton,* a decision which turned on the forum's interest in protecting an out-of-state plaintiff. *See infra* Part IV.

when the party answered, as might be the case if the complaint does not give defendant sufficient notice that plaintiff is making a certain type of claim."); *cf. Holzsager v. Valley Hospital,* 646 F.2d 792, 796 (2d Cir.1981) (rejecting a claim of waiver under Rule 12(h)(1) and stating that "a party cannot be deemed to have waived objections or defenses which were not known to be available [—in this case because a Supreme Court case making the defense available had yet to be decided—] at the time they could first have been made"). That Lilly moved quickly to confirm its suspicions about Glater's residence and then raised the defense reinforces our conclusion that it did not waive the defense earlier. *See Holzsager,* 646 F.2d at 796 (argument against waiver especially strong when objection raised as soon as its cognizability became apparent). Thus, under the Federal Rules the district court properly entertained Lilly's motion to dismiss on the basis of lack of personal jurisdiction.

### III. Effect of a Pending Class Action Involving Both Glater and Lilly

Glater is a plaintiff and Lilly a named defendant in the New Hampshire DES class action of *Mertens v. Abbott Laboratories,* No. 80–223 (D.N.H. filed May 13, 1980; transferred No. 80–0478 D.R.I.). Glater's motion to join *Mertens* as a named plaintiff was filed on July 11, 1980, and allowed on July 29, 1980.[2] A motion for class status in that case is still pending.

Glater cites *American Pipe & Construction Co. v. Utah,* 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713, *reh'g denied,* 415 U.S. 952, 94 S.Ct. 1477, 39 L.Ed.2d 568 (1974), for the proposition that the district court erred in dismissing this action while the *Mertens* class action was still pending. She claims that under the logic of *American Pipe* her status as a litigant in this action should have been determined either as of the date *Mertens* was filed or as of the date she opted into that class action. Thus, she should be considered as a New Hampshire

resident for the purposes of this suit and her subsequent move to Massachusetts should be regarded as irrelevant.

*American Pipe* concerned a class action brought under the antitrust laws and that action's impact on the running of the relevant statute of limitations. The court held as follows:

[A]t least where class action status has been denied solely because of failure to demonstrate that "the class is so numerous that joinder of all members is impracticable," the commencement of the original class suit tolls the running of the statute for all purported members of the class who make timely motions to intervene after the court has found the suit inappropriate for class action status.

*American Pipe,* 414 U.S. at 552–53, 94 S.Ct. at 765–66. Underlying the Court's holding was the notion that a tolling of the statute of limitations was necessary to foster the efficiency and economy of litigation goals of Rule 23, because without such tolling potential members could only protect themselves by filing individual motions to join or intervene in the class action. *Id.* at 550–54, 94 S.Ct. at 764–67.

*American Pipe* offers Glater little aid at this juncture. Even assuming that *American Pipe* may have some relevance to Glater's ability to intervene in *Mertens* or to bring a separate action if she is unable to pursue her claim as a member of the class, *American Pipe* says nothing about her ability to maintain a separate action while class certification is still pending. The policies behind Rule 23 and *American Pipe* would not be served, and in fact would be disserved, by guaranteeing a separate suit at the same time that a class action is ongoing.

In sum, we hold that Lilly did not waive its right to raise the issue of personal jurisdiction and that the pendency of the *Mertens* class action did not preclude a dismissal of this case.

### IV. Personal Jurisdiction Over Lilly

The primary issue in this appeal is that of personal jurisdiction and, as we have noted,

---

**2.** The district court explicitly distinguished this case from *Mertens* by noting that Glater was a

New Hampshire resident when she moved to join the class action.

the district court relied significantly on *Keeton v. Hustler Magazine, Inc.*, 682 F.2d 33 (1st Cir.1982), *cert. granted,* —— U.S. ——, 103 S.Ct. 813, 74 L.Ed.2d 1012 (1983), in dismissing for lack of jurisdiction. In several respects the present case parallels both *Keeton* and our earlier case of *Seymour v. Parke, Davis & Co.*, 423 F.2d 584 (1st Cir.1970). In both of those cases the plaintiff was not a New Hampshire resident; Glater's ties to New Hampshire are perhaps somewhat stronger in that she at least resided in the state for a number of years, although not at the times she suffered her injuries or filed her action. In all three cases the defendant was conducting a minimal amount of business within the state. Also, in all three cases statutes of limitations appear to have precluded actions in states other than New Hampshire.[3] In *Seymour* the cause of action did not arise in New Hampshire and in *Keeton* nearly all of plaintiff's damages arose from activity outside the state. Similarly, Glater was exposed to DES in Massachusetts and suffered her injuries there.

These factual configurations resulted in a personal jurisdiction analysis in *Keeton, Seymour,* and in the district court below which emphasized New Hampshire's lack of interest in protecting the plaintiffs because of their tenuous connections with the state. It appears likely that the Supreme Court will determine the proper role of these factors in the analysis of jurisdiction when it reviews our *Keeton* decision. Therefore, we have decided to defer final decision in this case until the Supreme Court has acted in *Keeton.* Counsel are requested to notify this court when such action takes place. We will retain jurisdiction of this case until *Keeton* is decided.

---

**3.** The statute of limitations issue in Glater's case was not addressed below and is not before us on appeal.